FILED

2012 Sep-11  AM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY COPPETT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-11-S-4227-NE |
| | ) | |
| TENNESSEE VALLEY | ) | |
| AUTHORITY, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Johnny Coppett, filed this case on December 15, 2011, asserting claims for violations of Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, and a supplemental state law claim for outrage, against the following defendants:  his employer, the Tennessee Valley Authority ("TVA"); Tom Kilgore, the "head" of TVA; Dennis Bottorff, Chairman of the Board of Directors of TVA; and Marilyn A. Brown, Mike Duncan, Tom Gilliland, William Graves, Barbara S. Haskew, Richard Howarth, Neil McBride, and William B. Sansom, the members of the Board of Directors of TVA.  All individual defendants are sued in their respective official capacities only.[1]  The case currently is before the court on defendants' motion for partial judgment on the pleadings.[2]  Upon consideration of the

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 21.

motion, briefs, and pleadings, the court concludes the motion should be granted in part and denied in part.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) (2008).

"Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (quoting *Moore v. Liberty National Life Insurance Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted)). Stated differently, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). When reviewing such a motion, the court is required to accept the facts alleged in the complaint as true, and to view them in the light most favorable to the nonmoving party. *Swerdloff v. Miami National Bank*, 584 F.2d 54, 57 (5th Cir. 1978).[3]

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Plaintiff began working for TVA in 1983.  Through continued education, training and competent job performance, he was promoted throughout his career.[4] Plaintiff began training to become an electrical craftsman in 1991, and he became a certified electrical craftsman, also sometimes referred to as a "technician," in 1993.[5] Plaintiff completed training to become a Level III Nuclear Electrical Technician in March of 2003.  He completed 99% of Level IV training, but TVA failed or refused to promote him to either of those levels.  Instead, plaintiff was promoted to a Level II Nuclear Electrical Technician in March of 2003.[6]

Plaintiff was diagnosed with Multiple Sclerosis ("MS") in August of 2003.  He informed TVA management officials of his medical condition, and that his doctors had restricted him from performing field work.  Consequently, plaintiff was assigned to perform administrative duties, including performing work order closures.[7]  He was promoted to foreman for work order closures in January of 2006, a position that he understood to be permanent and that paid a $68,510.00 annual salary.[8]

Plaintiff suffered an attack of MS in early 2006 and was on medical leave for several months.  While plaintiff was still on leave, in April of 2006, TVA demoted

---

[4] Complaint, at ¶ 7.

[5] *Id.* at ¶ 8.

[6] *Id.* at ¶ 9.

[7] *Id.* at ¶ 10.

[8] *Id.* at ¶ 11.

him from foreman back to a Level II Nuclear Electrical Technician, and his annual pay was reduced to $58,060.00.[9]    Plaintiff filed a grievance of disability discrimination with his union.   The grievance was resolved in December of 2006, when plaintiff was placed in an instructor position that paid a yearly salary of $68,510.00, with the possibility of a later salary increase to $73,040.00.  Plaintiff also understood that the instructor position would be permanent.[10]

Plaintiff was demoted back to a Level II Nuclear Electrical Technician on June 25, 2008, and his yearly salary was reduced to $61,900.00.  The reason provided for the demotion was that he was unable to stand for eight hours every day, and TVA needed instructors who could stand for eight hours.  Later, however, TVA informed plaintiff that the reason for his demotion was his failure to sign up for the "instructor pool," despite the fact that plaintiff did not know about the sign-up until after his demotion.  Plaintiff verbally expressed his interest in continuing as an instructor and his willingness to undergo any necessary training, but TVA informed him he could not work as an instructor because he could not stand for eight hours.[11]  Plaintiff believes TVA did not have any legitimate reason for removing him from the

---

[9] *Id.* at ¶ 12.

[10] Complaint, at ¶ 13.

[11] *Id.* at ¶ 14.

4

instructor position.[12]

On a date not specified in plaintiff's complaint, plaintiff filed an EEO claim for disability discrimination based on TVA's failure to promote him to a Level III Nuclear Electrical Technician despite his qualification for the position, as well as on his demotion from the foreman and instructor positions.[13]

Plaintiff also alleges that he was retaliated against for engaging in federally protected activity when he was forced to take 311.5 hours of annual leave and 168 hours of sick leave pending an investigation in May, June, July, and August of 2009. He was first told that the investigation was related to his MS medication, but he later discovered that a different reason was given for the investigation. However, plaintiff did not explain in his complaint the different reason later provided. Plaintiff claims that all allegations made against him were false and were eventually proven to be groundless.[14]

Plaintiff continues to work for TVA as a Level II Nuclear Electrical Technician performing work order closures. He even works 12-hour shifts as needed.[15] Other less experienced and less skilled employees perform the same administrative job

---

[12] *Id.* at ¶ 15.
[13] *Id.* at ¶ 16.
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶ 18.

duties as plaintiff, but those employees are paid as Level III Nuclear Electrical Technicians because they are not disabled.[16]

Plaintiff alleges that he is a qualified individual with a disability, because he had a physical impairment that substantially limited one or more of his major life activities, had a record of such an impairment, and/or was regarded as having such an impairment.[17]  At all relevant times, he was otherwise qualified to perform the essential functions of his job, with or without accommodations.[18]  However, TVA failed to accommodate plaintiff's disability by failing or refusing to promote him to Level III Nuclear Electrical Technician even though he was qualified for the position, by failing or refusing to permit him to perform his jobs as Nuclear Electrical Work Order Closures Foreman and Instructor, all with or without accommodation, and by failing to engage in the interactive process.  TVA was aware of plaintiff's medical condition, yet failed and/or refused to accommodate plaintiff because of his actual or perceived disability.[19]

Based on these factual allegations, plaintiff asserts claims for disability discrimination under Sections 501 and 504 of the Rehabilitation Act.[20]  He asserts that

---

[16] Complaint, at ¶ 19.

[17] *Id.* at ¶ 20.

[18] *Id.* at ¶ 21.

[19] *Id.* at ¶ 22.

[20] Section 504 is the only section that prohibits discrimination under federal programs.  *See*

TVA breached its obligation "to be a model employer of handicapped persons,"[21] that it failed to "properly assess the essential functions of the job in question and to determine whether plaintiff could perform these functions with or without reasonable accommodation,"[22] and that he was damaged by defendants' actions "in that he was caused to suffer discrimination based solely on his disability, emotional distress, loss of employment wages and benefits, and loss of opportunities for career advancement."[23]   Plaintiff also asserts a supplemental state law claim for outrage, which he supports by alleging that "defendants conducted themselves in a manner towards Plaintiff that was so extreme and outrageous as to be beyond all bounds of common social decency," that "[i]t was reasonably foreseeable that this conduct would result in the infliction of mental and emotional distress upon the Plaintiff," and that he was "damaged by this conduct in that he was caused to suffer mental and emotional distress."[24]

As relief for defendants' alleged violations, plaintiff requests a declaratory judgment that his rights have been violated; an injunction requiring TVA to place him

---

29 U.S.C. § 794(a).  Section 501 requires federal agencies to develop and administer an affirmative action plan for individuals with disabilities.  *See* 29 U.S.C. § 791(b).  Although it is not entirely clear from the language of plaintiff's complaint, plaintiff apparently is asserting a claim for defendants' failure to adopt an affirmative action plan.

[21] Complaint, at ¶ 27.

[22] *Id.* at ¶¶ 28, 33.

[23] *Id.* at ¶¶ 30, 34.

[24] *Id.* at ¶¶ 36-38.

in the Nuclear Electrical Work Order Closures Foreman position on a permanent basis with reasonable accommodations, restore all benefits and privileges he lost as a result of his demotion, refrain from further disability discrimination, and develop and implement an affirmative action plan to protect individuals with disabilities; lost wages and benefits; compensatory and punitive damages; costs, expenses, and attorney's fees; and any other appropriate relief.[25]

## III. DETAILED HISTORY OF ADMINISTRATIVE PROCEEDINGS

### A.    Plaintiff's 2008 Complaint

On August 6, 2008, plaintiff requested counseling at TVA's EEO office due to disability discrimination occurring in June of 2008 and on July 7, 2008. Specifically, plaintiff reported to the EEO counselor that, on July 7, 2008, Ronald H. Rogers, the Manager of Maintenance & Modifications at Browns Ferry Nuclear Power Plant, discriminated against him because of his MS when he did not promote plaintiff back to the position of Instructor, which caused plaintiff to remain at a lower rate of pay than if he had been promoted.  Plaintiff also complained that, in June of 2008, he was denied the opportunity to attend Instructor Training because of his MS.[26]

---

[25] *Id.* at 9-11 (Prayer for Relief).

[26] *See* doc. no. 22 (defendants' brief in support of motion for partial judgment on the pleadings), at Exhibit 1 (EEO Counselor's Report).  While a court generally may not consider matters outside the pleadings when ruling on a motion for judgment on the pleadings, *see* Fed. R.

Plaintiff filed a formal EEO complaint on October 6, 2008.  There, he added

the following allegations of disability discrimination:

> An additional issue is that I was demoted from a Foreman's
> position to a Level II Craftsman while I was on sick leave from January
> 2006 to July 2006.  Grievance attempts were resolved through some
> kind of negotiation between the local IBEW and TVA's human
> resources which resulted in me accepting the position of Instructor/
> Scheduler at Instructors' pay scale at the BFTC.
>
> Next, even though I had completed greater than 90% of Level 4
> training, I never received Level 3 Craftsman promotion and/or pay due
> to my disability.
>
> As one can see, these are additional counts of discrimination and
> these kinds of acts need to terminate immediately.[27]

TVA's EEO office sent plaintiff a letter on October 15, 2008, stating that it was

accepting for investigation plaintiff's claim that he was denied the opportunity to

attend Instructor training on July 7, 2008, resulting in a decrease in his pay.

However, the EEO office refused to accept plaintiff's claim that he did not receive

Level III pay in 2004, and his claim that he was demoted from a Foreman's position

to Level II Craftsman when he was on sick leave from January to July 2006.  Those

claims were dismissed as untimely, because plaintiff did not raise them within forty-

---

Civ. P. 12(d), it is appropriate to consider the record of administrative proceedings in the context of a motion challenging the plaintiff's exhaustion of administrative remedies.  The court may do so without converting the motion for judgment on the pleadings into a motion for summary judgment. *See, e.g., Tillery v. U.S. Dept. of Homeland Security,* 402 F. App'x 421, 423 (11th Cir. 2010); *Horne v. Potter,* 392 F. App'x 800, 802 (11th Cir. 2010).

[27] Doc. no. 22, Exhibit 2 (Equal Employment Opportunity Complaint), at 4.

five days of their occurrence.[28]

On February 26, 2009, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[29]   The ALJ entered an order on July 2, 2009, remanding the claim to TVA's EEO office for a final decision due to plaintiff's failure to comply with the ALJ's Scheduling Order.[30]   TVA's EEO office entered a final decision on July 29, 2009, finding no discrimination.[31]   Plaintiff appealed TVA's decision to the United States Equal Employment Opportunity Commission ("EEOC"), which held on September 20, 2011 that TVA properly dismissed plaintiff's first two claims as untimely, and that plaintiff had failed to establish discrimination with respect to his claims about the Instructor position.[32]

**B.    Plaintiff's 2009 Complaint**

On September 24, 2009, plaintiff sought counseling with TVA's EEO office after learning on August 24, 2009 that he had been placed on "non-work non-pay" status as a result of disability discrimination.[33]   As a remedy, plaintiff requested "reimbursement for every hour of [annual leave] and [sick leave] taken during the

---

[28] Doc. no. 22, at Exhibit 3 (Notice of Receipt, Partial Acceptance, and Partial Dismissal).

[29] Doc. no. 22, at Exhibit 4 (Request for Hearing).

[30] Doc. no. 22, at Exhibit 5 (Notice from ALJ).

[31] Doc. no. 22, at Exhibit 6 (Final Agency Decision).

[32] Doc. no. 22, at Exhibit 7 (EEOC Decision).

[33] Doc. no. 22, Exhibit 8 (EEO Counselor's Report), at 2.

timespan in question and compensation for every hour of overtime missed from May 28, 2009, to approximately June 28, 2009 (or when the outage was completed)."[34] TVA management indicated that it did not wish to participate in informal conciliation efforts because the information plaintiff had provided was too vague.[35]

Plaintiff filed a formal complaint with TVA's EEO agency on October 29, 2009, alleging disability discrimination and reprisal. To support his complaint, he stated:

> The reason I lost so much [annual leave] and [sick leave] is outlined below. This EEO Complaint is directly related to a May 18, 2009, Employment Grievance I attempted to file with IBEW Local #558 Job Stewar[d] Wayne N. Willis. The Employment Grievance was titled "Unfair Management Practices & Reverse Discrimination." The grievance identified that on May 15, 2009, I learned that my coworker, whom I had worked with off and on in performing administrative duties (work order closures) for several years, had an unspecified medical constraint which like me prevented her from performing all required duties of a Level III Electrical Craftsman. This coworker was never demoted to a Level II Craftsman like me. However, she was allowed to perform Admin work with me but compensated at a Level III Craftsman Pay rate. This is an act of Unfair Management Practices and since my coworker is an African American female, this appeared to constitute an act of reverse discrimination.
>
> Upon presenting the Employment Grievance to the above identified Job Stewar[d], he declined to accept it for filing and refused to sign a receipt for accepting it. Next, he did want to keep a copy for his records and to show the IBEW Local #558 Business Agent, so I

---

[34] *Id.*

[35] *Id.* at 3.

granted his request and gave the Job Stewar[d] a copy of the May 18, 2009, Employment Grievance.  I discussed pursuing the EEO route and our meeting then adjourned.  A short time later, I went looking for the Job Stewar[d] because I had another question to ask him.  As I looked out the window of the West entrance of the Maintenance Building, I observed the Job Stewar[d] meeting with my female coworker and she was reading what appeared to be the copy of the Employment Grievance that I had given him several moments earlier.  I believe that this act in allowing my coworker the opportunity to read my Employment Grievance resulted in a chain of events that led up to my Nuclear Unescorted Access Security Clearance being suspended.  I suspect that several personnel may have participated in achieving the requirements needed for suspension of my Nuclear Unescorted Access Security Clearance because this required documented data to be filed to accomplish this objective with the overall hopes in terminating my employment with TVA.  These suspicions were confirmed when the psychologists that I was required to meet with told me that a couple of coworkers and a supervisor/manager had filed these reports against me.  However, the contract physicians and psychologists had a different prognosis upon examining me.

In summary, one can clearly see the overall objective because of my disability was to remove me from M.E.G. Work Order Closures via the Behavior Observation Program by filing <u>bogus</u> Behavior Observation Reports and hoping that it would terminate my employment with TVA.  If they had been successful in terminating me, this probably would have opened many doors of opportunities for some people.[36]

Plaintiff requested reimbursement of each hour of annual leave and sick leave that was depleted, compensation for every hour of overtime he missed between May 28 and June 28, 2009, retroactive placement in the Level III Craftsman Pay range, and

---

[36] Doc. no. 22, Exhibit 9 (Equal Employment Opportunity Complaint), at 3-4 (emphasis in original) (bracketed alterations supplied).

reimbursement of all attorney's fees and expenses.[37]

On November 9, 2009, the TVA EEO agency dismissed plaintiff's claims as untimely because they were filed more than forty-five days after he learned of the events leading up to the claims.  TVA also found that plaintiff had stated insufficient grounds to support extension or waiver of the time limits.[38]  Plaintiff appealed the dismissal of his claims to the EEOC on December 9, 2009,[39] but the EEOC has not yet issued a decision on the appeal.

## C.    Plaintiff's 2010 Complaint

On April 26, 2010, plaintiff initiated EEO counseling with TVA's internal EEO agency on claims of race, color, sex, disability, and reprisal discrimination.  No details were provided about the nature of plaintiff's claims, but as compensation, plaintiff requested

> 1) To be compensated at the Level III Craftsman's pay scale that I so rightfully earned, and that it be retroactive for every hour I worked at a Level II Craftsman's Pay scale.  2) Reimbursement of 311.5 hours of Annual Leave I was forced to take from May 29, 2009 thru June 24, 2009 and July 13 thru July 23, 2009.  Further, upon consumption of most all of my accumulated Annual Leave, I was also forced to take 168 hours of my accumulated Sick Leave from July 24, 2009 thru August 20, 2009 for which I am seeking reimbursement.  3) Reimbursement of

---

[37] *Id.* at 4-5.

[38] Doc. no. 22, at Exhibit 10 (Notice of Receipt and Dismissal of Discrimination Complaint).

[39] Doc. no. 22, at Exhibit 11.

reasonable attorney fees and expenses.[40]

Informal conciliation efforts apparently were not successful, and plaintiff filed a formal complaint of discrimination on the basis of race, color, sex, disability, and reprisal with TVA's EEO office on May 16, 2010.  To support that complaint, plaintiff stated:

> Complainant has been discriminated against because of his race, color, and/or sex.  On March 28, 2010, Complainant discovered that a comparator, Phyllis A. Ricks, was again performing the same job as himself, administrative work.  However, Ricks was classified and being paid as a Level III craftsman while performing the job, while Complainant was classified and being paid as a Level II craftsman.  Complainant was and is qualified to perform the job of a Level III craftsman, with accommodation for his disability (MS).  If Ricks does not have a disability and requires no accommodation, then she should be fulfilling the full duties and requirements of Level III craftsman, which involves more than administrative work.  Even if Ricks has a disability and must be accommodated, her pay and classification are still higher than Complainant's, ostensibly because she is a black, African American female.  She has not been demoted as Complainant has been because of a disability.
>
> After the first instance when Complainant discovered Ricks was being paid more and classified higher to do the same work, Complainant attempted to file a grievance with the union.  However, the union representative refused to formally take the grievance, but kept a copy.  Upon information and belief, the union representative showed the complaint to Ricks.  Complainant was told Ricks was reassigned appropriate work for her classification.  Complainant has suffered harassment and reprisal since, and Ricks has apparently continued to perform the same work as Complainant, which Complainant discovered

---

[40] Doc. no. 22, Exhibit 12 (EEO Counselor's Report), at 2.

on March 28, 2010.[41]

Plaintiff also referenced some of his prior EEO complaints, including a September 28, 2009 complaint about the depletion of his annual and sick leave, an October 26, 2009 supplement to that complaint, and an April 26, 2010 complaint of disability discrimination and reverse discrimination.[42]

On June 3, 2010, TVA's EEO agency sent plaintiff a notice that it had accepted for investigation all of his claims except the claim that he had been subjected to reprisal for filing a union grievance. The reprisal claim was rejected because plaintiff had not alleged that his union grievance encompassed any allegations about activity that is protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[43]

After TVA's EEO agency completed its investigation, plaintiff requested an administrative hearing before an ALJ on October 2, 2010.[44] On May 6, 2011, after conducting a hearing, the ALJ found in favor of TVA on all of plaintiff's claims.[45] TVA adopted the ALJ's opinion as its Final Agency Decision on June 17, 2011.[46]

---

[41] Doc. no. 22, Exhibit 13 (EEO Complaint), at page 1 of the Attachment.

[42] *Id.* at pages 2-14 of the Attachment.

[43] Doc. no. 22, at Exhibit 14 (Notice of Receipt, Partial Acceptance, and Partial Dismissal).

[44] Doc. no. 22, at Exhibit 15 (Request for Hearing).

[45] Doc. no. 22, Exhibit 16, at 1 (Order Entering Judgment).

[46] Doc. no. 22, at Exhibit 17 (Final Agency Decision).

Plaintiff appealed the agency's decision to the EEOC on July 15, 2011,[47] but the EEOC has not yet ruled on the appeal.

## IV.  DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendants characterize plaintiff's complaint as asserting the following five claims under the Rehabilitation Act:

> (1) that TVA failed to promote him in 2003; (2) that TVA demoted him in 2006; (3) that TVA did not allow him to work as an "instructor/schedule coordinator" in 2008; (4) that TVA retaliated against him in June, July, and August, 2009; and (5) that TVA pays non-disabled employees more than they pay Plaintiff.[48]

Defendants argue that the first, second, and fourth of these claims — for failure to promote in 2003, demotion in 2006, and retaliation in 2009 — should be dismissed due to plaintiff's failure to exhaust administrative remedies.

"A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII." *Tarmas v. Secretary of Navy,* 433 F. App'x 754, 759 (11th Cir. 2011) (citing 42 U.S.C. §§ 2000e–5, 2000e–16; 29 U.S.C. § 794a; *Doe v. Garrett*, 903 F.2d 1455, 1459–60 (11th Cir.1990)).[49]

---

[47] Doc. no. 22, at Exhibit 18 (Notice of Receipt of Appeal).

[48] Doc. no. 22, at 1.  Defendant does not dispute that characterization.

[49] *See also Street v. United Parcel Service, Inc.,* 822 F. Supp. 2d 1357, 1364 (M.D. Ga. 2011)

Under . . . the Rehabilitation Act, federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act. *See* [29 U.S.C. § 794a(a)(1)]; 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *see also Mullins*[ *v. Crowell*], 228 F.3d [1305,] 1310-11 [(11th Cir. 2000)] (applying the 45-day exhaustion requirement to federal employees raising claims under the Rehabilitation Act). When the discriminatory act results in a personnel action, the employee must contact an EEO counselor "within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). . . . Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies. *See Brown v. Snow*, 440 F.3d 1259, 1264-65 (11th Cir.2006) (affirming the district court's determination that the defendant failed to establish that the plaintiff did not initiate contact within the 45-day charging period).

*Shiver v. Chertoff,* 549 F.3d 1342, 1344 (11th Cir. 2008).

Plaintiff acknowledges that he did not initiate contact with the appropriate administrative agency within 45 days of the 2003 failure to promote or the 2006 demotion, and that his claims based on those employment actions are therefore due to be dismissed.[50] Even so, he maintains that his retaliation claims are not barred, despite the fact that he waited 118 days after he was first placed on leave to initiate EEO counseling.[51] According to plaintiff, his retaliation claims should be construed

---

(citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir.2001)) ("A plaintiff may not sue under . . . the ADA unless he first exhausts administrative remedies by filing a timely charge of discrimination with the EEOC.").

[50] *See* doc. no. 26 (plaintiff's response brief), at 1 n.1.

[51] Plaintiff was placed on leave on May 29, 2009, according to the allegations of his compliant. He did not initiate EEO counseling until September 24, 2009, 118 days later.

as a "continuing violation" of the Rehabilitation Act, and the last action that is a part of that continuing violation occurred on August 20, 2009, the last day on which he was forced to take leave.  Because August 20, 2009 is within 45 days of September 24, 2009, plaintiff contends that he timely pursued the administrative remedies available to him.

Plaintiff relies primarily upon the Eleventh Circuit's decision in *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792 (11th Cir. 1992).  There, in a case involving a Title VII discrimination claim for which the time limit for filing an administrative complaint was 180 days, the Eleventh Circuit stated:

> The standard for determining whether an employment practice constitutes a continuing violation was set forth in *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir.1980).  In *Gonzalez*, the plaintiff alleged that Firestone's policy of awarding job opportunities on the basis of unvalidated standardized-test scores had a disparate impact upon Spanish-surnamed employees.  Firestone argued that Gonzalez's claim was barred because he had failed to file an EEOC charge within the limitations period after the allegedly discriminatory policy had been applied to deny him a promotion.  The court disagreed.  *Id*. at 249.

> Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice.  However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or

that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e-5(e) that the plaintiff file his charge of

discrimination within 180 days of the discriminatory act.

> *Id.* (citations omitted).  In determining whether [the employer's] policy
> constitutes a continuing violation, therefore, we must distinguish
> between the "present consequence of a one-time violation," which does
> not extend the limitations period, and the "continuation of the violation
> into the present," which does.  *See Webb v. Indiana National Bank*, 931
> F.2d 434, 438 (7th Cir.1991).

*Beavers,* 975 F.2d at 796.

Plaintiff also relies on the Lilly Ledbetter Fair Pay Act of 2009.[52]  That Act

amended Title VII of the Civil Rights Act of 1964 to state:

> For purposes of this section, an unlawful employment practice
> occurs, with respect to discrimination in compensation in violation of
> this subchapter, when a discriminatory compensation decision or other
> practice is adopted, when an individual becomes subject to a
> discriminatory compensation decision or other practice, or when an
> individual is affected by application of a discriminatory compensation
> decision or other practice, including each time wages, benefits, or other
> compensation is paid, resulting in whole or in part from such a decision
> or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).

> The Act was intended to "clarify that a discriminatory compensation
> decision or other practice that is unlawful under such Act occurs each
> time compensation is paid pursuant to the discriminatory compensation

---

[52] Plaintiff asserts that his claims are untimely under the Lilly Ledbetter Act because

he was subjected to discrimination in connection with the Agency's failure to pay
him while forcing him to take leave on multiple dates during the time period asserted
and he initiated contact with an EEO counselor within 45 days of multiple dates on
which the Defendant failed to compensate him.

Doc. no. 26, at 4.  That is basically a reiteration of his "continuing violation" argument.

> decision or other practice, and for other purposes." Pub.L. 111–2, 123
> Stat. 5 (2009).  The Act was a direct response to the Supreme Court's
> decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127
> S. Ct. 2162, 167 L. Ed.2d 982 (2007), which imposed a more restrictive
> interpretation of the limitations period for challenging discrimination in
> pay.  "The Act amends [the Rehabilitation Act] by providing that the
> statute of limitations for filing an EEOC charge alleging pay
> discrimination resets with each paycheck affected by a discriminatory
> decision." *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th
> Cir.2011).

*Tarmas v. Secretary of Navy,* 433 F. App'x 754, 760 (11th Cir. 2011) (bracketed

alteration in original).

Plaintiff asserts that his claims are untimely under the Lilly Ledbetter Act

because

> he was subjected to discrimination in connection with the
> Agency's failure to pay him while forcing him to take leave on multiple
> dates during the time period asserted and he initiated contact with an
> EEO counselor within 45 days of multiple dates on which the Defendant
> failed to compensate him.[53]

The court is persuaded by plaintiff's argument.  Here, plaintiff's allegations about

being forced to take leave in 2009 for retaliatory reasons can be considered part of a

discriminatory compensation decision or other practice.  Plaintiff was forced to use

his annual and sick leave as a result of TVA's allegedly retaliatory investigation into

his medication, and his lost leave was not restored when he was permitted to return

to work after the investigation.  Therefore, under the Lilly Ledbetter Act, plaintiff was

---

[53] Doc. no. 26, at 4.

affected by defendants' retaliatory decision each day he was forced to use his leave, as well as when his leave was not restored upon his return to work. As plaintiff filed an administrative complaint within forty-five days of some of defendants' allegedly retaliatory actions, his claims will not be dismissed as untimely.

The court is aware that it does not possess all of the facts that are relevant to plaintiff's retaliation claim. Discovery may reveal additional facts about the investigation into plaintiff's medication, and the resulting forced use of annual and sick leave. If that occurs, defendants have leave to raise this exhaustion issue again at summary judgment. In the meantime, however, plaintiff's retaliation claim will be allowed to proceed.

In summary, plaintiff's claims for failure to promote in 2003 and demotion in 2006 are due to be dismissed as a result of plaintiff's failure to exhaust administrative remedies.

## B.    Dismissal of Outrage Claim

Defendants next argue that plaintiff's outrage claim is barred because the Rehabilitation Act is plaintiff's exclusive remedy. *See, e.g., Brown v. General Services Administration,* 425 U.S. 820, 832-33 (1976); *Lucenti v. Potter,* 432 F. Supp. 2d 347, 366 (S.D. N.Y. 2006). Plaintiff concedes the dismissal of his outrage claim.[54]

---

[54] Doc. no. 26, at 1 n.1.

Accordingly, that claim will be dismissed.

## C.    Dismissal of Defendants TVA and Tom Kilgore

Defendants also argue that TVA and Tom Kilgore should be dismissed because plaintiff's Rehabilitation Act claims can only be brought against the TVA Board of Directors. *See, e.g., Watson v. Tennessee Valley Authority,* No. 5:11–cv–02560–SLB, 2012 WL 2114496, at *3-4 (N.D. Ala. March 30, 2012).  Plaintiff concedes this argument.[55]  Accordingly, all claims against defendants TVA and Tom Kilgore will be dismissed.  Plaintiff's remaining Rehabilitation Act claims will proceed against the members and chairperson of the TVA Board of Directors.

## V. CONCLUSION AND ORDER

In accordance with the foregoing, defendant's motion for partial judgment on the pleadings is GRANTED in part and DENIED in part.  It is ORDERED that the following claims are DISMISSED with prejudice: (1) plaintiff's Rehabilitation Act claims based on the 2003 failure to promote and the 2006 demotion; (2) plaintiff's claim for outrage (Count Three of his complaint); and (3) all claims against defendants Tennessee Valley Authority and Tom Kilgore.  The parties are directed to proceed to discovery on all remaining claims.

---

[55] *Id.*

DONE this 11th day of September, 2012.

_____

United States District Judge